Dr. Michael Oxford Good morning, may it please the Court. The issue here is whether under Section 251, a patentee may correct by reissue an inadvertent failure to file a required declaration. It's a matter of statutory construction. How do you read Section 251? When courts confront statutory construction issues, they look at a number of factors. I'm going to offer four of them in really descending order of importance. Don't give us a primer on the law of statutory construction, that's not a good use of your time. Let's go right to the heart of your argument. The first thing courts look at are the wording of the statute, and the most important thing. What is it about this statute's wording that saves the day for you? Because Judge Lancaster gave too restrictive a meaning to the words by reason of the patentee claiming more or less than he had a right to claim. Judge Lancaster paraphrased that statute, changed the wording of the statute, and read it as, and I quote, a reissued patent must result in a change to the specification, drawings, or claims of the predecessor patent. In other words, he interpreted those words, but we've had to claim more or less. To the extent that that's an inaccurate statement of law, why isn't it harmless error? Because we believe that MedRat is entitled to correct the failure to file a supplemental declaration, because that failure falls within the literal words of Section 251. Well the literal words of Section 251 seem to focus on the verb claiming, claiming more or claiming less. So what did the absence of a declaration have to do with claiming? Substitute for the word claiming the word assert or contend. The error that Judge Lancaster made was in reading the word claim as if it referred to the claim language in the patent. I'm going past what Judge Lancaster said, and I'm asking you to help me understand what Congress meant in the statute when it used the word claiming. Claiming more than or claiming less than, through inadvertent mistake, etc. We contend that it meant that, it meant contention, it meant assert, it meant claim. So that the question is, did MedRat claim, assert, or contend less than it had a right to claim, assert, or contend? And that's where the supplemental declaration fits the language of the statute. MedRat had a right to claim that the error it was trying to correct in the first reissue was inadvertent, was made without deliberate intent, and was, rendered the patent wholly invalid. But was it an error regarding claiming? It wasn't a failure, it was an error in the sense it was a mistake, and it was an error We all agree it was a mistake. The question is whether it was a mistake going to claiming. And my contention is, Your Honor, yes, because the declaration is claiming something. And the failure to submit the declaration is claiming. Let me ask you this. Is a, in a reissue application, is a supplemental declaration required in every case? It's required, it is, Your Honor, I believe. A supplemental declaration? Oh, not a supplemental declaration, but the original declaration. That's what we're talking about here. The supplemental declaration falls at the end and is an attempt to look back and pick up things that happened in. What kinds of things trigger the requirement to file a supplemental declaration? If you file your original declaration when you file for the reissue, if during the course of that reissue process, the focus of the reissue proceeding changes. Or the claims are amended. Or the claims are amended, or the inventorship is amended, or the priority is changed, as Stoddard in those cases indicate, then, according to the ITC, you file a supplemental declaration. So in this case, the original reissue was invalid because there were changes made to the claims that would trigger a requirement to file a supplemental declaration, and a supplemental declaration was not filed. I believe that's correct. So if those changes to the claims had not been made, then the requirement for a supplemental declaration would not have been triggered. If the original declaration had covered all the changes made in the original reissue application, then I believe your honor is correct. So isn't it correct, then, to characterize the defect that caused the invalidity, the fact that you claimed more or less, and I think in this case less, than you had a right to claim without a declaration? If you hadn't made some of the amendments, then your reissue would be fine without the supplemental declaration. Well, and then there was the second reissue, your honor, which was an attempt to correct the failure to file the, there were changes made going into the first reissue. I'm trying, I'm trying to help you out here. I understand that, your honor, and I'm trying to be helped, too. I'm just trying to see whether this, this analysis holds water, but it seems to me that if the supplemental declaration is not necessary in every reissue, and it's only necessary where you've altered the claims, then the reason that your first reissue is in the second reissue is invalid is because you're claiming something more or less than you had the right to claim without a declaration, without a supplemental declaration. Well, if I understand your honor correctly, it was actually, I think, where I was trying to go on Judge Michel's question, and that is, you can say the declaration is a claim, it's an assertion, and get there that way, or you can say that as a result of the ITC, it's the plain, it's, if you will, the dictionary meaning of the word claim, and it's broader than, it is broader than the words claim language or claim to the invention, which is how Judge Lancaster read it, and there is authority for that. But you can also take, I think the approach your honor is taking, that it is that because the reissue was declared invalid, that MedRat is, by definition, winds up claiming less than it had a right to claim, and you can get there either way. Now, on the question of the meaning of the word claim being broader than claim to the invention, I would cite the court to the Brenner v. State of Israel case, and to the Fontigin v. Okamoto case. Brenner was first a district court decision, and then affirmed by the D.C. Court of Appeals, and Fontigin was a CCPA decision, which pointed to Brenner, and particularly the district court. And I'll read from what the Brenner district court... In Brenner, and in Stoddard, and in all these cases that you cite, the effective scope of the claim was broadened by something being added to page one of the patent, the correct name of the inventor, et cetera. In this case, nothing is being added to page one of the patent. In this case, nothing is being added anywhere in the patent document. In this case, you want something submitted to the file in the patent office that should have been submitted at the time of the prosecution of the first reissue, but wasn't. So how is that comparable to what happened in Brenner, or Stoddard, or any of those other cited cases? We cite Brenner, and Stoddard, and Fontigin, really to point out that language in Brenner is the phrase, claim in the patent is, as used in section 251, includes a claim to a right of priority, and is not limited to claims defining the invention. It's sort of the Rosetta Stone here, because once this court understands... You're not following. I'm agreeing with you that you don't have to change claim language, but you do have to change, the precedent suggests, something in the patent somewhere, like on page one. You agree that here, you're not changing or adding anything to page one. No, Your Honor. But we are. So then how are you under the shadow of any of those precedents? Because this goes to the record that the patent examiner reviews, and that the public and potential infringers look at to determine what MedRAD's rights are. The word right is in there. We were claiming less than we had a right to claim in the application. It's the application that will ultimately define how we got to this patent. It's the substantive record on which the patent is based. Our contention would be that section 251 is there as a remedial statute to allow patentees to correct things that affect that substantive record in a way that was inadvertent, and in a way that doesn't prejudice under section 252. Let's put aside inadvertence and prejudice, and assume that it was inadvertent and it was not prejudicial. Putting those aside, how is it that the statute was intended to fix a prosecution error by an attorney as opposed to an error in the patent? By phrasing, we would suggest by the broad phrase, by reason of the patentee claiming more or less than he had a right to claim in the patent. If Congress had intended that remedial statute to be limited to changing words in the patent itself, it could have said that. It spoke in terms of claims and rights. My suggestion would be that those are very broad terms. Don't you agree that the second reissue patent and the first reissue patent read word for word the same from the top of page one to the bottom of the last page? Actually, Your Honor, I believe there were some additional references that were added in the second reissue, but we don't rely on those in this case. The claims are the same, claims have the same wording, inventorship is the same, etc. The only difference is that the file of the second reissue prosecution has in it a supplemental declaration that was missing from the file of the first reissue prosecution. As relevant to this appeal, yes, Your Honor. That is the difference. That's the only difference. As relevant to the appeal. As I say, there were some references in the second reissue that we aren't citing. Why shouldn't we conclude that this is a kind of attorney error that Congress didn't provide correction opportunity in 251? Well, you get then to the policy of the statute, which is to be remedial, Your Honor. It is to prevent forfeiture, inadvertent forfeiture of a right where no one is harmed. I'm trying to follow the statute to figure out what Congress wanted me as a judge to do. It looks to me like Congress is saying, in certain circumstances, let them fix the defect. But the premise is, in certain circumstances, not always, not any defect, but if certain prerequisites are met. So then we're trying to define what are the prerequisites. There seem to be four. Two are not even arguably an issue here. Nothing wrong with the drawings. Nothing wrong with the language in the specification. So there were some claim language problems. And so in the first reissue, they were fixed. In the second reissue, nothing was fixed, but a missing document was supplied. That facially seems to fall outside of what the statute dictates. I would disagree because I would suggest that the failure to submit a required declaration is literally a failure to claim something the patentee had a right to claim. And that... Well, if we agree with that definition of right to claim, then absolutely you win. That sounds very strange to me, but maybe I'm being too picky. Well, I'd only suggest, Your Honor, that other courts have gotten there too. And you cannot read, for example, Judge Lancaster's position that you've got to find the error in the claim language consistently with cases like Brenner... I've already agreed with you that that statement is an inaccurate statement of law, but that doesn't mean that you win. You need more to win. Then once you're outside the claim language, you have to look back at the language of the statute, you have to look at prior judicial decisions, you have to look at administrative interpretations, here the PTO approved the second reissue, and you have to look at the purpose of the statute, which is it's a remedial statute designed to allow patentees to correct inadvertent errors that don't hurt anybody. Are you suggesting that somehow we have to defer to the examiner here because the examiner allowed the second reissue, that somehow that should influence what we decide? You don't have to defer to them, Your Honor. I'm suggesting that it is a consideration where, a common consideration in statutory interpretation are the administrative constructions. There was no administrative construction of the statute here. The examiner simply allowed the reissue. He didn't construe the statute. Even though... Where in the examiner's answer is there a construction of the statute? He allowed the reissue. Of course he allowed the reissue. He never defined any words in the statute at all. So how you can say there's a statutory construction by the examiner kind of escapes me. Do you want to save the remaining rebuttal time? I would, Your Honor. Thank you. Mr. Chambers. Good morning, Your Honor. May it please the Court, the cases of Hewlett-Packard v. Bausch and Lown, In re Wilder, In re Amos state that there are two distinct statutory requirements for error in section 251. First, the patent must be wholly or partly inoperative or invalid by reason of a defective specification of drawing or by reason of the patentee claiming more or less than he had a right to claim. In re Wilder holds that the reissue oath or declaration must satisfy these two distinct statutory requirements. We would submit that Medrad is quite wrong when it asserts that there's no case from this Court limiting the language by reason of the patentee claiming more or less than he had a right to claim to the scope of the claims. We respectfully direct the Court to the case of Hewlett-Packard v. Bausch and Lown where the Court held that the Court will grant me the indulgence of a brief quotation. The precedent of this Court is that the expression less than he had a right to claim is not a right to claim. It refers to the scope of the claim. Where are you in your brief? I'm reading from Hewlett-Packard v. Bausch and Lown. We have not quoted that language in our brief. We have quoted other aspects of Hewlett-Packard. The quotation is at 882 F. 2nd at 1564. The Court cited In re Ressler and In re Handel for that proposition and then continued, conversely the alternative that the patentee claimed more than he had a right to claim comes into play where the claim is too broad in scope in view of the prior art or the specification and the patentee seeks narrower claims. Now in Hewlett-Packard, what happened there was the patentee or Mr. Chambers, do you know of any other case in which someone sought to correct the defect in a reissue patent that had already corrected the defect in the original patent and then filed a second reissue application to correct the defect in the first reissue application? I'm not aware of any such case. My reference to... When we analyze whether the 602 second reissue patent changes claiming, do we look at only at the first reissue, the 648 or do we also look at the original patent, the 036? No I don't think you look at the original patent, 036. Well you would agree that if we compare 602 and 036, the original, there is a change in claim scope. I would agree with that. But there isn't a change in claim scope if we only compare 602 second reissue with 648 first reissue. Exactly and as the procedure goes in the 648 reissue patent, once that patent, which did have changes in claims, they over claimed, they under claimed, they had a change in inventorship. At that point when the 648 patent reissued, was issued, they surrendered the 036 patent. The 036 patent ceased to be. I thought you had to surrender the patent when you made the application for reissue. Actually I believe you have to surrender it at the time of issuance. Typically the procedure is during prosecution you offer to surrender it and then at the time of issuance they surrender. So 648 was. Stands on its own, it's like an original patent, 036 is a nullity. Then the analysis is. Because 036 evaporated the minute 648 issued. Correct your honor. So 036 is gone, so if we compare 648 with the successor reissue 602, we see nothing regarding claim. No change at all in the specification or claims. Or anywhere. Or anywhere. Yes. And the analysis. Because the declaration isn't part of the patent, it's just part of the prosecution history. Correct. Correct. And so the analysis would be, had you taken the 036 patent, filed the 648 and made no changes in the claims whatsoever, would the 648 support a reissue and the case law is clearly no. In Ray Rogoff is one example, Hewlett-Packard is another example, and in Hewlett-Packard there were claims added, those were dependent claims in order to, and there was no allegation that the independent claim was in any way over-broad or under-broad, but just dependent claims were added so that there would be more claims as a backup position in case the original independent claim was ruled invalid, and there the court said there's been no change in claim scope, there's been a change in the number of claims, but you cannot provide us with any evidence or the device that would infringe the dependent claims would not also infringe the independent claims. Mr. Chambers, in this case, the defect in the reissue, the first reissue, was the fact that there was a supplemental declaration missed. Correct. And that supplemental declaration was required because there was an amendment made to correct an over-claiming. I believe that's correct. Correct, Your Honor, plus the amendership. Now to remedy that, the second reissue application was filed, no changes to the claims, but the omitted supplemental declaration was presented. Now hypothetically, if instead of doing that, a second reissue application had been filed, amending the claims back to the way they were before the over-claiming amendment was made, would that have been proper? That would have been, that would have been. No supplemental declaration submitted because none is required. If you took the 602 and amended it back to the 648, well the claims already were the same. Amended it back to the way it was, because there were changes made initially to correct an under-claiming problem and then an amendership issue. And then during the course of prosecution, as I understand it, there were further amendments made to correct what was perceived to be over-claiming, to get around some prior art. Correct. And it was that change that triggered the requirement for a supplemental declaration. Correct. And the defect was that the supplemental declaration wasn't filed. So to correct that defect, instead of taking the path that they took to file the same text with simply the missing declaration, if they had filed the text and amended it back to the way it was before a supplemental declaration was required, would that have been proper? I don't think that would have been proper. The first reissue would have been invalid for lack of a supplemental declaration under the NUPLA case. Then you would say, I'm going to reissue from 648 and 602, now how am I going to change the claims? I'm going to change them back to 036, but those claims are already, the overly broad claims were already defective. And so then you would have to say those over-claimed, well, they would be invalid. You'd be back saying what you said in 648, that they're too broad and I have to restrict them. So I don't see how that scenario could possibly work. You couldn't make any of the allegations that you'd have to make to support a reissue in the first place? No, Your Honor. Mr. Chambers, is it your view at the end of the day that there's simply no way that an omission of a supplemental declaration required by the regulation can be cured once the reissue proceeding concludes? That's my position, Your Honor. That's my position. All right. Anything further? Just one brief point, Your Honor, or two brief points. These cases of Brenner, Stoddard, et cetera, Brenner is a 1968 case, which was 15 years before the Federal Circuit even existed, and of course didn't have the benefit of the jurisprudence of this court. Stoddard was a 1977 case. I think the court is aware, and Judge Lancaster I think did an excellent job speaking to those decisions and how they're really not helpful in this case, because they made no analysis of what we're discussing here as to the limitations of Section 251. And I know Your Honor is aware of the Fisler v. Ranbaxy case that was decided last Wednesday, which emphasized the importance of the rules and what's the statutory requirements and abiding by statutory requirements, and that's what this case is all about, is abiding by statutory requirements. And all this talk about a statute being remedial, I don't know what that gets us, because if you cannot qualify under the statutory language in here, MedRat cannot, you don't even get to the issue of what sort of exceptions or dispensations can you get once you get through that gate. But here, quite clearly, in the Fisler case, the court actually cited Section 111A-2C, which requires a declaration of oath on filing, as one of those statutes, as a statutory requirement that must be met. Let me just ask you the same question I asked the opposing counsel before you sit down, and that is, that if the requirement for filing the supplemental declaration in the first reissue was the fact that there was a change to the claims to correct over-claiming, and that the problem that resulted in the invalidity of that first reissue was the fact that there was this amendment to the claims without a supplemental declaration, then why isn't the filing of a reissue with a supplemental declaration to correct a defect caused by over-claiming, or under-claiming, I guess? Because the analysis is that the terms over-claiming and under-claiming in the statute go to the scope of the claims, not these procedural aspects of filing a declaration or not filing a declaration. Yes, but had the amendment in the first reissue application to correct the over-claiming, had that amendment never been made, putting aside the possible validity problems, but had that amendment never been made, then the requirement for a supplemental declaration would never have been triggered. Correct. So the requirement that was not met was triggered by an amendment to the claims. It's a defect resulting from an alteration of the claims. During prosecution, and that's why Rule 175B comes into play, the NUPLA case that says you have to file a supplemental declaration, because Rule 175B is carrying out the mandate of 251, which says that... To rephrase it, I guess what I'm saying is, isn't the defect caused by the applicant claiming more or less than he had the right to claim without a declaration? No, I think the claim stands on itself. Whether he claimed more or less, the amendment says I claim more than I had a right to claim. Then you have the procedural issue of Rule 175B that says you must file. You must. It's mandatory. You must file a supplemental declaration attesting to the requirements of 251 in order to support that claim. It's not a change in claim language. And then when you get to 602, clearly the claims are identical. So you don't even have that argument. Thank you. Thank you, Mr. Chambers. Mr. McGuff? Preliminarily. I noticed that you weren't the author or listed even of counsel with respect to this brief. And I'm embarrassed to admit that I don't recall even your firm affiliation. Can you straighten me out why you're here and what you had to do with this case earlier in terms of the briefing and so on? Your Honor, we've been involved, our firm has been involved with MedRAD and there's a whole... Your firm being? It's Reed Smith. Reed Smith. Okay. He's been involved with MedRAD and a great deal of litigation with Tyco and some of their subsidiaries. Now, who actually wrote the brief? It was... Reed Smith participated in the writing of the brief, but it was filed by the counsel of record there, Mr. Walters and... It seems... The reply brief, for example, seems to be signed by Mr. Walters, although over the printed name of Arthur Weinberg of the Aiken Gump firm. So I guess the accurate statement is that the principal and responsible author of the brief is Mr. Walters. As a signatory, I would agree, Your Honor, I think as in many of these cases, it is a committee action. Now, here's why I'm asking. A very powerful argument is made in the reply brief at page 22 and 23 based on subsection C of regulation 175. Now, as I understand it, subsection C was added in 2004. The second reissue prosecution in this case preceded 2004. So the reissue prosecution in this case was under the predecessor version of 175. When I look at the predecessor version of 175, it has no subsection C. So Mr. Walters has made an argument about a subsection C that was not in the regulation at the relevant time period, in which case it seems to me the court has been significantly misled, which I find very unfortunate. Well, I apologize for that, Your Honor, and as counsel here before you, I will take responsibility for it. What would be helpful in a case like that is for somebody, when they first stand up here to say, oops, we made a mistake, our brief says X, that's actually not accurate, not true, the truth is Y, we're sorry, let's go on from there. But when it's not acknowledged, not maybe detected, or if detected, not acknowledged, then we go through the whole study of the briefs and the oral argument under a false presentation of the state of the law. Very unfortunate. I apologize, Your Honor, I can assure you it was not detected, and therefore not acknowledged. All right. Please get to your substantive rebuttal. I would only suggest, Your Honor, that in lining this up, Medrad went from having a valid reissued patent in 648 to not having a valid reissued patent pursuant to the ITC decision. And you can get within the literal meaning of the statute either of two ways. You can get there by reading the words claim in section 251 as assert or contend, and consider the supplemental declaration and assertion or contention in the record of the patent that Medrad had a right to make. Or you can get there, as I believe Judge Lynn is getting there, by saying, by definition, going from having a valid reissued patent to not having a valid reissued patent is claiming less, underclaiming in its largest form, claiming less than Medrad had a right to claim. I did not hear Mr. — I wasn't sure whether Mr. Chambers tried to defend Judge Lancaster's reading of 251 or not. I don't believe that reading that Judge Lancaster gave to the statute, which is that 251 requires a change to the claim language in the patent, is sustainable. Of course it's not sustainable. Well, we all know it's not sustainable because this Court in Bank and Bennett held to the contrary. Of course that's an inaccurate statement, but that's not the end of the case. No, it isn't, Your Honor. But once you're off the claim language, one has to look for what then is the meaning of the word claim in section 251 in claim. And I'd only suggest that another indicator that Judge Lancaster may have gotten this wrong is that he winds up by his own — in his own opinion, twice acknowledging this as a harsh result under a remedial statute. And that's where the point of the — that's where the remedial portion of the statute comes into play. I apologize for the error in the brief, Your Honor, and would suggest that the case be vacated and remanded. Thank you. All right. We thank both counsel, all counsel, and we'll take the case under advisement. All rise. The Honorable Court is adjourned on day 10.